Brian T. Belowich (BB-6910)
Joanna Sandolo (JS-9187)
BELOWICH & WALSH LLP
140 Grand Street, 8th Floor
White Plains, New York 10601
(914) 265-6068
(914) 265-6168 (fax)
bbelowich@belowichwalsh.com
jsandolo@belowichwalsh.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
KARASS BROADWAY 901, LLC,

                            Plaintiff,                      Civil Action No.

    -against-

                                                                 **COMPLAINT**

RETAIL BRAND ALLIANCE, INC.,

                            Defendant.
-----------------------------------------------------------------X

      Plaintiff Karass Broadway 901, LLC ("Plaintiff"), by and through its undersigned attorneys, Belowich & Walsh LLP, as and for its Complaint against Defendant Retail Brand Alliance, Inc. ("Defendant"), alleges as follows:

**NATURE OF THE ACTION**

      1.      By this action, Plaintiff seeks damages, attorney's fees, and costs resulting from Defendant's willful breaches of the parties' Agreement of Lease, dated as of March 30, 2011 (the "Lease"), pursuant to which Defendant leased a portion of the ground floor and basement of Plaintiff's building located at 901 Broadway, New York, New York for the purposes of operating a Brooks Brothers retail clothing store.

      2.      Defendant breached the Lease by, among other things, failing to pay Plaintiff

more than $100,000 in "Fixed Rent" and by vacating and abandoning the leased premises without notice prior to the expiration of the Lease term. On or about April 21, 2020, Plaintiff terminated the Lease.  Plaintiff now brings this action to recover damages, attorney's fees and costs incurred as a result of Defendant's breaches of the Lease, as provided for under the Lease.

## PARTIES

3. Plaintiff is a New York limited liability company having an office at 125 Park Avenue, Suite 2526, New York, New York 10017.  Plaintiff is the owner of certain real property known as 901 Broadway, New York, New York 10003 (the "Building").

4. Upon information and belief, Defendant is a Delaware corporation having an office at 100 Phoenix Avenue, Enfield, Connecticut, 06082.  Defendant is a privately-held company and the owner of the Brooks Brothers retail clothing chain.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.

6. This Court has personal jurisdiction over Defendant, pursuant to the terms of the Lease, by which Defendant has submitted to the jurisdiction of this Court with respect to any action or other proceeding arising out of or relating to the Lease.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), in that the subject property is situated in this District and a substantial part of the actions giving rise to this action occurred in this District.

## FACTS

8. The Building is a five-story commercial building located on the corner of 20th Street and Broadway in the Flatiron neighborhood of Manhattan.

9. On or about March 30, 2011, Plaintiff, as Landlord, and Defendant, as Tenant, entered into the Lease, pursuant to which Defendant leased a portion of the ground floor and basement of the Building (the "Premises") for the purposes of operating a Brooks Brothers retail store therein, for a term of fifteen (15) years (the "Term"), commencing on March 15, 2011, and expiring on February 28, 2026 (the "Expiration Date").

10. Pursuant to the terms of the Lease, Defendant is required to, *inter alia*, "continually use and occupy" the Premises for the entire Term (i.e., through February 28, 2026).

11. Further, Defendant is required to pay rent to Plaintiff, *inter alia*, as follows:

> C. Fixed Rent.
>
> (i) Commencing on the Commencement Date, and continuing each Lease Year throughout the Term, Tenant shall pay Landlord the annual Fixed Rent payable without demand, on or in advance of the first calendar day of each and every month in equal monthly installments, in lawful money (legal tender for public or private debts) of the United States of America, at the office of Landlord or such other place as Landlord shall designate from time to time without any set-off, offset, abatement or deduction whatsoever, except that Tenant shall pay the first (1st) monthly installment of Rent upon Tenant's execution of the Lease.
>
> * * *
>
> D. Additional Rent. In addition to the Fixed Rent payable hereunder, Tenant shall pay additional rent ("Additional Rent" or "additional rent") consisting of all other sums of money, if any, as shall become due and payable by Tenant to Landlord hereunder (for default in the payment of which Landlord shall have the rights and remedies provided herein or by law as for a default in the payment of Fixed Rent, notwithstanding the fact that Tenant may not then also be in default in the payment of Fixed Rent). All payments of rent (Fixed Rent and additional rent are sometimes collectively referred to as "rent" or "Rent") shall be made by check subject to collection.

Lease, Article 1.

12. The Fixed Rent due to Plaintiff from Defendant for the Lease year commencing on April 1, 2019 and ending on March 30, 2020 (Lease Year 9) is $68,088.89 per month ($817,066.70 annually). *See* Lease, Ex. "D."

13. The Fixed Rent due to Plaintiff from Defendant for the Lease year commencing on April 1, 2020 and ending on March 30, 2021 (Lease Year 10) is $70,131.56 per month ($841,578.70 annually). *See id*.

14. The Fixed Rent due to Plaintiff from Defendant for the remainder of the Lease Term is set forth as follows:

| Lease Year | Annual Rent | Monthly Rent |
|---|---|---|
| 11 | $866,826.06 | $72,235.51 |
| 12 | $892,830.85 | $74,402.57 |
| 13 | $919,615.77 | $76,634.65 |
| 14 | $947,204.25 | $78,933.69 |
| 15 | $975,620.37 | $81,30170 |
| **Total** | **$4,622,097.30** | |

Lease, Ex. "D."

15. Under Article 19(B) of the Lease, a five percent (5%) late charge shall be applied "[i]f Tenant shall fail to make payment of any installment of Fixed Rent or any additional rent within ten (10) days after the date when such payment is due, Tenant shall pay to Landlord, as a late charge and as additional rent, a sum equal to five (5%) percent of the amount unpaid."

**<u>Defendant's Defaults</u>**

16. On or about March 26, 2020, Defendant defaulted under the Lease by abandoning the Premises without notice to Plaintiff, removing its inventory and leaving the Premises empty as depicted below.






17.     Defendant further defaulted under the Lease by failing to pay its March 2020 Fixed Rent in full, having a balance in arrears of $28,079.31, and by failing to pay its April 2020 Fixed Rent, in the amount of $70,131.56, despite due demand.

18.     Article 17 of the Lease, entitled "DEFAULT" provides, in relevant part:

>    A.    Events of Default; Conditions of Limitation.  This Lease and the term and estate hereby granted are subject to the limitations that upon the occurrence, at any time prior to or during the Term, of any one or more of the following events (referred to as "Events of Default"):
>
>        (i) if Tenant shall default in the full payment when due of any

installment of Fixed Rent or in the payment when due of any additional rent; and such default shall continue for a period of ten (10) days after written notice by Landlord to Tenant; or

* * *

(iii) if the Premises shall become vacant, deserted or abandoned.

* * *

then in any of said cases, at any time prior to or during the Term, of any one or more of such Events of Default, Landlord, at any time thereafter, at Landlord's option, may give to Tenant a five (5) days notice of termination of this Lease and, in the event such notice is given, irrespective of whether or not such default has been cured, this Lease and the Term shall come to an end and expire (whether or not the Term shall have commenced) upon the expiration of said five (5) days with the same effect as if the date of expiration of said five (5) days were the Expiration Date, it being the express intention of the parties hereto to create hereby a conditional limitation, **but Tenant shall remain liable for damages as provided for in Article 18 hereof**. Notwithstanding anything to the contrary set forth in this Subsection A, in the event Tenant fails to pay Rent and/or additional rent as set forth in subparagraph (i) of this Subsection A above, Landlord shall be permitted, at its option, to serve Tenant with a three (3) day notice of such default, which is the predicate notice for the commencement of the a [sic] non-payment summary proceeding.

Lease at Article 17 (emphasis added).

19. On or about April 6, 2020, Plaintiff served Defendant with a Notice of Default and Ten (10) Day Notice Demanding Payment of Rent, demanding payment of a total amount due of $103,956.10 as follows:

| | |
|---|---|
| Balance March 2020 Fixed Rent | $28,079.31 |
| April 2020 Fixed Rent | $70,131.56 |
| April 2020 Late Fee (5%) | $5,745.23 |
| **TOTAL:** | **$103,956.10** |

20. Defendant failed to cure its default. Therefore, on April 17, 2020, Plaintiff served Defendant with Notice of Termination of the Lease in accordance with the terms thereof.

21. Thereafter, on or about April 21, 2010, Defendant returned its key to the Premises to Plaintiff, representing that the Premises "have been vacated in broom clean condition and the

keys have been surrendered…"

22. Plaintiff now brings this action to recover damages, attorney's fees and costs resulting from Defendant's default, in accordance with the terms of the Lease.

23. Article 18 of the Lease, entitled "REMEDIES AND DAMAGES," provides:

> A. Landlord's Remedies. (i) If an Event of Default occurs, … or if this Lease and the Term shall expire and come to an end as provided in Article 17:
>
> (a) Landlord and its agents and servants may immediately, or at any time thereafter or after the date upon which this Lease and the Term shall expire and come to an end, re-enter the Premises or any part thereof, either by summary proceedings or by any other applicable action or proceeding, (without being liable to indictment, prosecution or damages therefor), and may repossess the Premises and dispossess Tenant and any other persons from the Premises and remove any and all of their property and effects from the Premises; and
>
> (b) Landlord, at Landlord's option, may relet the whole or any part or parts of the Premises from time to time, either in the name of Landlord or otherwise… **Landlord shall have no obligation to relet the Premises or any part thereof and shall in no event be liable for refusal or failure to relet the Premises or any part thereof, or, in the event of such reletting, for refusal or failure to collect any rent due upon such reletting, and no such refusal or failure shall operate to relieve Tenant of any liability under this Lease or otherwise to affect such liability**…
>
> * * *
>
> B. Damages. (i) If this Lease and the Term shall expire and come to an end as provided in Article 17, or by any other summary proceeding or any other action or, if Landlord shall re-enter the Premises as provided in subsection A of this Article 18, or by or under any summary proceeding or other action or proceeding, then, in any of said events:
>
> (a) Tenant shall pay to Landlord all Rent, additional rent, the Abatement, Landlord's mortgagee's fees and charges, and other charges payable under this Lease by Tenant to Landlord to the date upon which this Lease and the Term shall have expired and come to an end or the date of re-entry upon the Premises by Landlord, as the case may be;
>
> (b) Tenant shall also be liable for and shall pay to Landlord, as damages, any deficiency (referred to as "Deficiency") between the Rent reserved in this Lease for the period which otherwise would have constituted the unexpired portion of the Term and the net amount, if any, of rents collected under any

reletting effected pursuant to the provisions of subsection A(i) of this Article 18 for any part of such period…; and

(c) whether or not Landlord shall have collected any monthly Deficiencies as aforesaid, Landlord shall be entitled to recover from Tenant, and Tenant shall pay to Landlord, on demand, in lieu of any further Deficiencies as and for liquidated and agreed final damages, a sum equal to the amount by which the Rent reserved in this Lease for the period which otherwise would have constituted the unexpired portion of the Term exceeds the then fair and reasonable rental value of the Premises for the same period, less the aggregate amount of Deficiencies theretofore collected by Landlord pursuant to the provisions of subsection B(1)(b) for this Article 18 for the same period; if, before presentation of proof of such liquidated damages to any court, commission, or tribunal, the Premises, or any part thereof, shall have been relet by Landlord for the period which otherwise would have constituted the unexpired portion of the Term, or any part thereof, the amount of rent reserved upon such reletting shall be deemed, prima facie, to be the fair and reasonable rental value for the part or the whole of the Premises so relet during the term of the reletting.

* * *

C. <u>Legal Fees</u>. (i) Tenant hereby agrees to pay, as Additional Rent, all reasonable attorneys' fees and disbursements (and all other costs or expenses or legal proceedings) which Landlord may incur or pay out by reason of, or in connection with:

(a) any action or proceeding by Landlord to terminate this Lease in which Landlord is the prevailing party by settlement or otherwise;

(b) any other action or proceeding by Landlord against Tenant (including, but not limited to, any arbitration proceeding) in which Landlord is the prevailing party by settlement or otherwise;

(c) any default by Tenant in the observance or performance of any obligation under this Lease (including, but not limited to, matters involving payment of rent and additional rent, computation of escalations, alterations or other Tenant's work and subletting or assignment), whether or not Landlord commences any action or proceeding against Tenant;

* * *

(ii) Tenant's obligations under this subsection C of Article 18 shall survive the expiration of the Term hereof or any earlier termination of this Lease. This provision is intended to supplement (and not to limit) other provisions of this Lease pertaining to indemnities and/or attorneys' fees.

Lease, Article 18 (emphasis added).

24. In addition to the foregoing, Article 18(D) of the Lease provides for "Additional Landlord Remedies," including that:

> (ii) Tenant hereby acknowledges and agrees that in the event this Lease and the Term hereof shall expire and come to an end as provided in Article 17, or if Tenant shall vacate the Premises prior to the Expiration Date, Tenant shall be liable for an amount equal to the sum of the unamortized portion of (i) the cost of Landlord's Work, (ii) the Abatement, and (iii) any brokerage commissions or fees paid by Landlord in connection with this Lease (amortized on a straight-line basis over the Term of the Lease), which sum shall be immediately due and payable by Tenant on demand by Landlord and deemed to be additional rent hereunder.

Lease, Article 18(D)(ii).

25. Plaintiff is entitled to damages in an amount to be determined at trial, but not less than $5,000,000, and is otherwise entitled to all of the remedies set forth under the Lease.

**COUNT I**
**Breach of Contract**

26. Plaintiff repeats and realleges each of the allegations contained in paragraphs "1" through "25" above, as if fully set forth herein.

27. Plaintiff and Defendant are parties to the Lease.

28. Pursuant to the Lease, Defendant was required to, *inter alia*, "continually use and occupy" the leased premises for the entire duration of the Lease Term, which commenced on March 15, 2011 and expires on February 28, 2026.

29. In addition, Defendant was required to pay Plaintiff rent as set forth in the Lease, including but not limited to "Fixed Rent" due in monthly installments on or before the first calendar day of each month of the Term.

30. Defendant breached the Lease by, among other things, vacating and abandoning the Premises without notice to Plaintiff prior to expiration of the Term.

31. Defendant further breached the Lease by failing to pay the March 2020 Fixed

Rent due under the Lease and by failing to pay April 2020 Fixed Rent due under the Lease.

32. Defendant also breached the duty of good faith and fair dealing inherent in all contracts, including the Lease.

33. Plaintiff has fully performed all of its obligations under the Lease.

34. Plaintiff has suffered damages as a result of Defendant's breaches in an amount to be determined at trial, but not less than $5,000,000, together with interest, attorney's fees and costs.

35. Plaintiff is entitled to recover damages, attorney's fees and costs incurred as a result of Defendant's breaches in accordance with Article 18 of the Lease.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Karass Broadway 901 LLC requests judgment against Defendant Retail Brand Alliance, Inc. as follows:

A. On Count I, awarding Plaintiff damages in an amount to be determined at trial, but not less than $5,000,000, together with interest, attorney's fees and costs; and

B. Granting Plaintiff such other relief as the Court deems just and proper.

Dated: White Plains, New York
May 5, 2020

BELOWICH & WALSH LLP

By: /s/ Joanna Sandolo
Brian T. Belowich (BB-6910)
Joanna Sandolo (JS-9187)
140 Grand Street, 8th Floor
White Plains, New York 10601
(914) 265-6068
(914) 265-6168 (fax)
bbelowich@belowichwalsh.com
jsandolo@belowichwalsh.com
*Attorneys for Karass Broadway 901, LLC*